UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Case: 1:26-mj-000129 |
| | ) | Assigned To: Judge Harvey, G. Michael |
| **v.** | ) | Assign. Date: 7/31/2026 |
| | ) | Description: COMPLAINT W/ARREST WARRANT |
| **TIMOTHY WILLIS** | ) | |
| | ) | **UNDER SEAL** |
| **Defendant.** | ) | |
| | ) | |

AFFIDAVIT IN SUPPORT OF A
CRIMINAL COMPLAINT & ARREST WARRANT

I, Jeremiah Johnson, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1.      I submit this affidavit in support of a criminal complaint charging Timothy Willis with violations of 18 U.S.C. § 1201(a) (Interstate Kidnapping), 47 U.S.C. § 223(h)(2)(A) (Intentional Disclosure of Nonconsensual Intimate Visual Depictions), and 22 D.C. § 402 (Assault with a Dangerous Weapon).

2.      Unless otherwise noted, wherever in this affidavit I assert that a statement was made, that statement is described in substance and is not intended to be a verbatim recitation of such statement.  Wherever in this affidavit I quote statements, those quotations have been taken from draft transcripts, which are subject to further revision.

3.      Unless otherwise stated, the conclusions and beliefs I express in this affidavit are based on my training, experience, and knowledge of the investigation, and reasonable inferences I have drawn from my training, experience, and knowledge of the investigation.

1

**PROBABLE CAUSE**

1.      On June 23, 2026, at approximately 11:00PM, Metropolitan Police (MPDC) Detective Thomas interviewed Adult Victim 1 (herein "AV1") regarding an incident that occurred on June 15, 2026. AV1 advised she is employed by DC Fire and EMS and has been employed by the agency since 2006. AV1 has known TIMOTHY CHRISTOPHER WILLIS, born on ███████ 1992 (herein "WILLIS"), for approximately one and a half years and stated she had been in a romantic relationship with WILLIS during that time period.

2.      AV1 recounted that she and WILLIS were inside her vehicle in Alexandria, Virginia. AV1 was operating the vehicle while WILLIS occupied the front passenger seat. WILLIS was completing DoorDash deliveries using AV1's personal cellular phone. While en route to their third DoorDash delivery, WILLIS began going through the contents of AV1's phone and became upset, accusing her of being unfaithful. AV1 stated WILLIS began yelling statements to the effect of "Bitch, you cheating? You out here sucking dick and sending pictures." WILLIS then retrieved AV1's folding knife from the center console of her vehicle. AV1 described the knife as a black Smith and Wesson folding knife with a black handle, black blade, and white and silver Smith and Wesson lettering on the blade. WILLIS held the knife in his right hand, pointed it toward her, and stated, "Bitch, I'll kill you." AV1 advised these events occurred within the jurisdiction of Alexandria, Virginia.

3.      While WILLIS was still holding the unfolded knife, he repeatedly demanded that AV1 drive him "uptown," causing her to drive toward Washington, D.C. The following offenses occurred within the District of Columbia.

4.     While driving, AV1 intentionally attempted to weave through traffic in hopes of drawing the attention of law enforcement so she could safely escape from WILLIS, but was unsuccessful. She then told WILLIS that she needed to use the restroom and began driving toward the area of Elmira Street SE and Forrester Street SE because she had acquaintances who lived in that neighborhood. While driving toward that location, AV1 stated WILLIS became increasingly agitated and accused her of playing games. At some point, AV1 had regained control of her personal cellphone, but WILLIS snatched it back from her. WILLIS stabbed the front passenger seat of her vehicle with the knife, causing damage to the seat. After stabbing the seat, WILLIS again placed the knife against the side of AV1's neck and stated, "Bitch, I'll kill you. I'll ruin your career." While still holding the knife in his right hand, WILLIS struck AV1 approximately two times on her right shoulder with his fist.

5.     Upon arriving in the area of the 600 block of Elmira Street SE, AV1 immediately exited the vehicle and called 911. WILLIS fled from the vehicle on foot while still in possession of her personal cellular phone. AV1 then re-entered her vehicle and pursued WILLIS because he had taken her phone. While searching for WILLIS, she located and flagged down MPDC Officer Sanders. While Officer Sanders was conducting his investigation and broadcasting a lookout for WILLIS, AV1 began receiving numerous notifications on her work phone. She discovered that WILLIS had accessed her personal Instagram account using her stolen cellular phone and uploaded a video to her Instagram Story depicting AV1 performing oral sex on WILLIS. AV1's face is clearly identifiable in the video. WILLIS also distributed the same video through several iMessage group chats using her phone. At approximately 9:15PM, on June 15, 2026, WILLIS sent the video to a group chat of approximately twenty DC Fire and EMS members. WILLIS sent the same video to another group chat of approximately five DC Fire and EMS members, as well as a third group chat of approximately six or more DC Fire and EMS employees. WILLIS

3

also distributed the video through additional iMessage group chats containing AV1's personal friends and acquaintances. AV1 did not give permission for WILLIS to share the explicit video, which was viewed by numerous coworkers and professional contacts within DC Fire and EMS, resulting in significant personal and professional embarrassment.

6.    AV1 stated that she recovered her personal cellular phone later in the evening of June 15, 2026, through her son's father, who had contacted WILLIS on AV1's stolen phone. AV1's child's father and WILLIS subsequently met up and the child's father retrieved AV1's phone and returned it to her.

7.    During the course of the investigation, AV1 provided Detective Thomas with numerous screenshots documenting phone calls, text messages, and notifications she received from multiple individuals advising her that the explicit video had been posted to her Instagram account and distributed through numerous iMessage group chats. Those screenshots were received and retained as evidentiary material in support of this investigation.

8.    Detective Thomas also reviewed the initial investigation from June 15, 2026, and confirmed that photographs documenting AV1's visible injuries were taken by Officer Sanders. Additionally, on June 24, 2026, Detective Thomas presented a confirmation photograph of WILLIS to AV1. When asked, "Who is this person?", AV1 identified the individual as WILLIS. When asked, "How long have you known this person?", AV1 responded, "One and one-half years." When asked, "What did this person do?", AV1 wrote, "Assaulted me, threatened to kill me, posted a video to social media of me giving him oral sex, posted the same video in multiple group chats as well as numerous friends in my text thread, stabbed my car seat with my knife, and also held a knife to my neck."

9.    Detective Thomas reviewed numerous screenshots provided by AV1 documenting text message communications sent by WILLIS following the June 15, 2026, offense. Throughout

4

the messages, WILLIS repeatedly requested that AV1 call him or meet with him. As the messages continued over several days, WILLIS became increasingly emotional and apologetic. He repeatedly professed his love for AV1, stating he loved her, missed her, wanted to spend the rest of his life with her, and wanted another opportunity to repair the relationship. WILLIS claimed he had been miserable without her, had not been eating or sleeping, and stated he was emotionally devastated following the end of their relationship. WILLIS further stated that he blamed himself for everything that had occurred, repeatedly apologized for hurting AV1, and stated AV1 did not deserve the way he had been treating her. WILLIS stated that he hated himself, did not want to live if AV1 left him, and stated, in substance, that he would kill himself because he hated himself for what had occurred. Detective Thomas also observed screenshots showing that WILLIS sent AV1 an Apple Pay transfer in the amount of $300.00 with the memo, "This here for your truck." In subsequent messages, WILLIS again apologized and acknowledged AV1 did not deserve the way she had been treated.

10.     On Monday, June 22, 2026, AV1 responded to several of WILLIS's messages, advising WILLIS that she had nothing further to say to him and instructed him multiple times to leave her alone. When WILLIS asked whether the relationship was over, AV1 replied that he had ruined her career. WILLIS responded that she had not been fired and attempted to reassure her that everything would be okay. AV1 told him that the matter was still an ongoing process and again instructed WILLIS to leave her alone.

11.     During the course of this investigation, AV1 provided Detective Thomas with a screenshot depicting the call history from her work cell phone (the phone not taken by WILLIS). Detective Thomas reviewed the screenshot and observed an outgoing telephone call placed on June 15, 2026, at approximately 5:33PM. AV1 advised this call was made to the Alexandria Police Department following the initial assault in Virginia. The screenshot further showed an additional outgoing telephone call placed on June 15, 2026, at

5

approximately 6:05PM. Detective Thomas reviewed the associated NetViewer CAD event and confirmed the call was entered onto the Seventh District dispatch board at approximately 1807 hours and dispatched at approximately 1809 hours. The documented times are consistent with AV1's account of the events.

12.    Detective Thomas also reviewed Ring camera footage obtained during the investigation. The footage depicts AV1 crouching behind a parked white vehicle in a residential neighborhood in Alexandria, Virginia. AV1 advised Detective Thomas that after the initial assault and threat with the knife in Virginia, she intentionally exited her vehicle under the pretense of needing to use the restroom, in order to create an opportunity to escape from WILLIS and seek assistance. However, WILLIS ordered her back in the vehicle. While reviewing the Ring footage, AV1 identified her vehicle parked on the opposite side of the street. The footage depicts an individual standing outside AV1's vehicle, whom AV1 identified as WILLIS. Although the Ring video does not capture the initial assault itself, it is consistent with AV1's account of stopping, exiting the vehicle, and attempting to distance herself from WILLIS.

13.    Detective Thomas further reviewed digital evidence documenting the unlawful publication of the explicit video. The investigative timeline reflects that the first known transmission of the explicit video was sent to an individual identified as "Lil Keith" at approximately 6:02PM on June 15, 2026. Based upon AV1's statement that WILLIS fled the scene while in possession of her cellular phone, and considering the documented transmission time of the video, the evidence is consistent with WILLIS having possession and control of AV1's phone at this time. Collectively, AV1's call history, NetViewer CAD records, Ring doorbell camera footage, and the documented timestamps associated with the unlawful publication of the explicit video establish a timeline that is consistent with AV1's account of events and provide

independent corroboration regarding WILLIS's possession of her cellular phone and the sequence of events.

14. In addition, Detective Thomas contacted Witness 1 (W1), a Lieutenant with DC Fire and EMS, who advised that he was a member of one of the DC Fire and EMS group chats that received the explicit video depicting AV1. He stated the video was sent to the group chat on two separate occasions on June 15, 2026. W1 stated that when the video was initially received, he believed AV1 may have accidentally sent the video herself. However, after the video was sent a second time, he became concerned. Based upon his personal knowledge of AV1, he did not believe that she would intentionally distribute an explicit video of herself to coworkers. W1 believed that something was wrong and decided to call AV1's personal cell phone to check on her welfare. W1 stated that an unknown male answered AV1's cellular phone. W1 asked the male, "Who is this?" The male initially responded by asking, "Who is this?" W1 identified himself and again asked the male to identify himself. The male replied, "This is Tim, motherfucker."

15. On June 30, 2026, Detective Thomas contacted WILLIS regarding this investigation. WILLIS voluntarily responded to the Seventh District to meet with Detective Thomas. Upon his arrival, WILLIS was placed under arrest in connection with this investigation. Detective Thomas conducted a custodial interview with WILLIS after advising him of his Miranda rights. WILLIS knowingly, intelligently, and voluntarily waived his Miranda rights and agreed to speak with Detective Thomas. During the interview, WILLIS denied all of the allegations made by AV1. WILLS was charged with Robbery while Armed, 22 D.C. §§ 2801, 4502, Assault with a Dangerous Weapon, 22 D.C. § 402, First Degree Unlawful Publication, 22 D.C. § 3053, and Threat to Injure or Kidnap a Person, 22 D.C. § 1810, and presented in D.C. Superior Court on July 1, 2026 (case 2026 FD3 10148).

## CONCLUSION

Based on the foregoing, there is probable cause to believe that TIMOTHY WILLIS committed violations of 18 U.S.C. § 1201(a) (Interstate Kidnapping), 47 U.S.C. § 223(h)(2)(A) (Intentional Disclosure of Nonconsensual Intimate Visual Depictions), and 22 D.C. § 402 (Assault with a Dangerous Weapon), on or about June 15, 2026.

_____
Jeremiah Johnson
Detective (D1-1262)
Metropolitan Police Department

Respectfully submitted and attested to in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 and 41(d)(3) via telephone on July 31, 2026.

_____
The Honorable G. Michael Harvey
United States Magistrate Judge

8